**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

HEATHER ROBINSON, #309247,

        Petitioner,

v.                              Case No. 2:06-CV-11324
                                      Honorable Marianne O. Battani
                                      Magistrate Judge Virginia M. Morgan

SUSAN DAVIS,

        Respondent.

_____/

**AMENDED OPINION AND ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS**

      Petitioner, Heather Robinson, is a state inmate currently incarcerated at Huron Valley Complex-Women in Ypsilanti, Michigan, where Susan Davis is the warden. Petitioner was convicted of first-degree criminal sexual conduct, Mich. Comp. Laws §750.520(1)(a), and was sentenced as an habitual third offender, Mich. Comp. Laws §769.11, to twenty to forty years' imprisonment. Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the Court will deny the petition.

**I. BACKGROUND**

      Petitioner's conviction arose from allegations of sexual abuse committed by Petitioner upon her five-year old son, Dallas Robinson. Petitioner testified at trial and denied ever having sexual intercourse with her son. (Trial Tr., 3/24/00 at 90). She admitted, however, that she bit Dallas on the buttocks in order to teach him a lesson about

biting others. (*Id.* at 117). The bite left a mark, which was observed by Petitioner's mother, Sandra Peterson. (Trial Tr., 3/23/00 at 60). Although Petitioner denies engaging in sexual activity with Dallas, there is trial testimony which disputes Petitioner's assertions.

Dallas testified that he performed oral sex upon Petitioner and engaged in sexual intercourse with Petitioner. (Trial Tr., 3/21/00 at 156-161). Dallas also testified that he told Sandra Peterson and her husband Walter Peterson, his grandparents, about his sexually explicit dreams and about his *actual* engagement of sexual intercourse with Petitioner. (Trial Tr., 3/21/00 at 162-64, 175-79). Mr. Peterson testified that Dallas told him explicit details about his sexual relations with Petitioner. (Trial Tr., 3/23/00 at 18-24). Mrs. Peterson testified that she observed a human bite mark on Dallas' buttocks and that Dallas revealed details to her about his dreams and *real* sexual encounters with Petitioner. (Trial Tr., 3/23/00 at 60, 69-71). Mrs. Peterson also testified that while on a trip to California with Dallas and Mr. Peterson, Dallas spoke to Petitioner on the telephone, and afterwards, Dallas took off his clothes, got into the bed and said that he was going on a date. (Trial Tr., 3/23/00 at 76-77).

Mary Kay Neuman, a social worker in the child sexual assault unit of the Oakland County Prosecutor's Office, testified that Dallas told her he and Petitioner engaged in sexual intercourse. (Trial Tr., 3/24/00 at 15). Karol Ross, an expert witness for the defense, testified that she did not believe the investigation into the veracity of Dallas' allegations was adequate. (Trial Tr., 3/23/00 at 125).

After a jury trial in Oakland County Circuit Court, Petitioner was convicted of the above stated offenses. Petitioner filed an appeal of right and raised the following claims:

Part One - The Court's Erroneous Rulings

2

Part Two - Ineffective Assistance of Counsel

Part Three - Prosecutorial Misconduct

Part Four- Erroneous Sentencing

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Robinson,* No. 230187, 2003 WL 21205841, *1 (Mich. Ct. App. May 22, 2003) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court and raised the following issues, which are the same as those presented before the Michigan Court of Appeals, but worded more specifically:

> I.  Whether fundamental fairness demands a new trial when the trial judge made rulings that constituted an abuse of discretion such that the accused was denied a fair opportunity to put on a defense and the integrity of the fact finding process was eviscerated.

> II.  Whether fundamental fairness demands a new trial when the defense attorney was woefully inadequate and admitted that the trial court's erroneous rulings on key evidentiary issues "disemboweled" his case.

> III.  Whether fundamental fairness demands a new trial when the prosecutor committed numerous indiscretions, including purposefully misstating evidence, making improper argument and working to inflate the jury.

> IV.  Whether fundamental fairness demands a new sentencing when the sentence was beyond the proper number of years and lacking in the necessary articulation for departure from the guidelines.

Petitioner's application for leave was denied in a standard order. *People v. Robinson,* 469 Mich. 950; 671 N.W.2d 51 (2003) (table).  Petitioner then filed a motion for relief from judgment raising the following the issues:

> I.  Petitioner Robinson was denied her due process right to a fair trial under the state and federal constitutions (US Const, Ams V, XIV; Const 1963, art 1, §20) where a witness employed by the prosecutor's office improperly bolstered the testimony of the complainant with highly prejudicial personal and professional opinion testimony.

3

II.  Petitioner was denied her right to a fair trial under the state and federal constitutions (US Const, Ams V, XIV; Const 1963, art 1, §20) when the prosecutor engaged in severe and repeated outcome-determinative misconduct.

III.  Petitioner was denied the effective assistance of counsel guaranteed by the federal and state constitutions (US Const, Am VI; Const 1963, art 1, §20) where her trial attorney, with no strategic purpose, made several outcome-determinative errors.  (US Const, Ams V, XIV; Const 1963, art 1, §20)

IV.  Petitioner was denied effective assistance of counsel guaranteed by the federal and state constitutions (US Const, Ams VI; Const 1963, art 1, §20) where her appellate counsel, on direct appeal, neglected "dead bang winners."

On March 16, 2005, the trial court denied Petitioner's motion for relief from judgment.  (Pet., App. C).  Petitioner filed an application for leave to appeal with the Michigan Court of Appeals arguing the same four issues presented in her motion for relief from judgment and relief was denied.  *People v. Robinson,* No: 261432, (Mich. Ct. App. Sept. 23, 2005).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court where relief was also denied.  *People v. Robinson,* 474 Mich. 985; 707 N.W.2d 204 (2005) (table).

Petitioner now seeks a writ of habeas corpus asserting the  following claims:

I. Petitioner was denied effective assistance of counsel and a fair trial (U.S. Const., Ams. V, VI, XIV), where her trial attorney with no strategic purpose, made several outcome-determinative errors.

II.  Petitioner's due process right to a fair trial (U.S. Const., Ams. V, XIV) was violated when the prosecutor engaged in severe and repeated outcome-determinative misconduct.

III.  Petitioner Robinson's due process clause right to present a defense and her Sixth Amendment right to the effective assistance of counsel were violated when she was prevented from presenting evidence concerning "magical thinking" and critical of the work of a therapist hired by an interested party to "prepare" the complainant for trial, evidence which clearly indicates the unlikelihood that the act she was convicted of occurred.

4

IV. Petitioner Robinson was denied her due process right to a fair trial under the federal constitution (U.S. Const., Ams. V, XIV) where a witness employed by the prosecutor's office improperly bolstered the testimony of the complainant with highly prejudicial personal and professional opinion testimony.

V. Petitioner Robinson was denied the effective assistance of counsel guaranteed by the federal constitution (U.S. Const., Am. VI) where her appellate counsel neglected strong, critical issues which must be seen as significant and obvious.

VI. Assuming *arguendo* that the standard of review set forth in 28 U.S.C. §2254(d)(1) precludes relief in this action, the court should not apply that standard because it is unconstitutional, and the court should grant the writ under a *de novo* standard of review.

Respondent has filed an answer to the petition, asserting that Petitioner's first and third claims involve an objectively unreasonable application of clearly established Supreme Court law; his first (in part), second, fourth and fifth claims are procedurally defaulted; and his sixth claim is without merit. Petitioner subsequently filed a reply brief.

## II. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

> The Supreme Court explained the proper application of the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

6

The Supreme Court held a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11.  *See also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

### III.  DISCUSSION

### A. Ineffective Assistance of Counsel

### 1.  Failure to Adequately Prepare for Trial

Petitioner cites three points under the umbrella of ineffective assistance of counsel which he attributes to being ill-prepared for trial.

#### a.  Failure to be an Effective Advocate for Petitioner

Specifically, Petitioner claims as follows:

Trial defense counsel completely "fell apart" after a series of erroneous hearsay rulings "disemboweled the case."  Counsel failed to make an offer of proof after the suggested hearsay objections in relation to the testimony of expert witness Karol Ross regarding "magical thinking" and her general commentary on the report of Lou Goldman, an "expert" with a Masters

7

degree only who worked for months to "prepare" Dallas for trial.   Counsel's failure to explain the import of "magical thinking" contributed to the court's erroneous rulings and caused a miscarriage of justice when the defense expert's testimony on this critical point was excluded.

(Pet. at 31) (internal references omitted). Petitioner states that defense counsel's failure to adequately prepare for trial put him in the position of: (1)  being incapable of addressing hearsay issues; (2) failing to make appropriate objections at trial: (3) failing to respond in an effective manner to "the trial court's removal of critical expert evidence;" and (4) providing no  "legal analysis with respect to the basis for an expert's opinion." (*Id.* at 32-33).

The Michigan Court of Appeals did not find Petitioner's argument persuasive:

Defendant also complains that trial counsel should have objected to, or moved to suppress, evidence of "improper 'biting,' 'bruising,' 'bashing,' and 'abusing' testimony," which was elicited through Walter and Sandra Peterman.   The general admission of defendant's other acts was part of defense counsel's trial strategy.   He wanted the evidence of defendant's past, bad acts admitted into evidence.   At the *Ginther* hearing, defense counsel testified that he wanted defendant's life to be broadly explored and put into perspective.   He was preparing to object to anything he did not want admitted.   In closing argument, defense counsel used the bad-acts-evidence to portray defendant as being honest about her past and mistakes.   He also used the evidence to paint a portrait of the relationship between defendant and her mother.   This enabled defense counsel to argue that the driving force behind the allegations in this case was Sandra Peterman's judgment of defendant's interactions with the victim.   Under the circumstances, defendant has failed to overcome the presumption that the challenged conduct was sound trial strategy.

*Robinson,* 2003 WL 21205841, *3  (internal citations omitted).

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.   In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.   First, a petitioner must prove that counsel's performance was

deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*.

In order to prove deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different" *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).   Under *Strickland,* a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy.  See *Hutchinson v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).

Trial counsel asserts that his failure to object to the admission of Petitioner's past bad acts was trial strategy.  The trial court's determination that defense counsel's conduct

9

was a matter of trial strategy is a factual determination which is entitled to deference. *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999); see also 28 U.S.C. §2254(e)(1) (a state court's determination of a factual issue is presumed to be correct unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence). However,"the adequacy of the pretrial investigation and the reasonableness of a particular strategic or tactical decision is a question of law, entitled to de novo review." *Moore,* 194 F.3d at 604. Courts are "not required to condone unreasonable decisions, parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decisions at all. *Id.*

Petitioner puts forth a two-part advocacy argument. First, for the reasons cited *infra* at A(1)(b), the Court does not find that trial counsel was ineffective relative to the testimony he was able to elicit from his expert witness. Secondly, Petitioner argues that trial counsel was ineffective for allowing into evidence, without objection, testimony which placed Petitioner in a poor light with the jury, resulting in prejudice and an unfair trial. The Court disagrees. Trial counsel explained at the *Ginther* hearing as follows:

> Q   Okay. Do you recall making objection, strike that. There were a number of inquiries into prior bad acts by Heather during the prosecutor's examination. Do you recall that?
>
> A   Yes, we talked about Heather's background.
>
> Q   Okay. There were a number of inquiries into prior unconvicted bad acts by Heather, including beating for example and . . . and how many men she'd slept with and all sorts of things. Do you recall any of that testimony?
>
> A   I remember the, yes there was quite a bit of inquiry on cross examination of Heather by the assistant prosecutor into various aspects of conduct. Whether they would be called, classified as bad acts under the Rule of Evidence, I'm not sure. But, I also went into

> that sort of thing on direct to try to establish the context of Heather's life with her, with her mother.
>
> Q       Okay.  And when the prosecutor went into the acts that Heather had not testified to on direct, did you object?
>
> A       I don't recall at what point I may, at this point where I may have or may not have.
>
> Q       Did you have a plan to allow the prosecutor to go into prior bad acts that may be prejudicial to your client that you had not opened the door on?
>
> A       Clearly, it was my, it was my intention and was discussed with Heather in anticipation of her taking the witness stand in her own defense that it seemed advisable to open up the, the context of her relationship with her mother.  That [   ] that would likely be opened fairly broadly and put into some perspective. Depending on what the prosecutor might respond with in cross examination, I was certainly prepared to make objections.  I think that's my answer.

(GH Tr., 7/27/00, at 108-09).  Also, trial counsel explained to the jury during his closing argument why they were informed of so much negative information about Petitioner, which supports the position that trial counsel was being strategic in allowing the evidence to be put into the record with no objection:

> Why the story.  Why the story of Heather's past.  Why such an attempt on my part to bring out the evidence, so much evidence that tarnishes this defendant, this lady's, Heather's reputation, can only, only serve the purpose of making her look bad in your eyes.  Maybe even reach the conclusion, bad seeds.  Certainly promiscuous, certainly making decisions all over the park that God help any of us, that our kids do that or we've done that.  I mean, it's a bad thing.
>
> And yet, how does this tale really begin.  It begins with the birth of Dallas.  It begins with the relationship of Heather and her parents.   Not a good one. Not a good one.  Much tension.  Much grief.

(GH Tr., 7/27/00, at 146-47).  Trial counsel went on to assert that Petitioner's parents had lost all faith in her and were predisposed to assume the worst when they saw the bite on

11

Dallas's buttocks.  *Id.* at 150-52.  Therefore, trial counsel argued that the Petitioner's parents may have unintentionally encouraged Dallas to come forth with sexual abuse allegations.

Allowing the jury to learn about Petitioner's negative past provided the jury with the context needed to understand why the Petitioner's parents might have been inclined to believe the worst of Petitioner and to unintentionally encourage Dallas to make allegations of sexual abuse.  This trial strategy is not so unreasonable as to be "outside the wide range of professionally competent assistance."  *Strickland,* 466 U.S. at 690.  Accordingly, the Court does not find ineffective assistance of counsel as to this claim.

> b.  Failure to Properly use Karol Ross and
>     Catherine Okla as Expert Witnesses

Petitioner claims that trial counsel's failure to prepare expert witnesses, Karol Ross and Catherine Okla, prejudiced Petitioner's case because his lack of preparation rendered him ineffective in marshaling "the experts at his command to present the jury with a viable explanation of how "magical thinking" [i.e., make believe or made up] and other phenomena could have combined with lengthy preparation by a non-neutral "therapist" to produce testimony that should be considered highly suspect."  (Pet. at 35).  Petitioner argues that this was not a strategy implemented by defense counsel, but was simply his lack of preparation which left defense counsel unable to counter "faulty and extremely damaging testimony produced with [Lou] Goldman's "preparation" . . .  *Id.*  The Michigan Court of Appeals rejected Petitioner's claim as follows:

> We . . .  conclude that counsel was not constitutionally ineffective in his
> handling of Ross' testimony.  While counsel may have made a greater effort
> to rephrase his questions so as to avoid an account of Goldman's notes and
> focus on Ross's criticisms and how Goldman might have affected the victim's

12

> memory of the alleged events, counsel was successful in presenting the core of Ross's testimony, and we are satisfied that a more complete discussion of the issues would not have affected the outcome of the trial.
>
> * * *
>
> At the *Ginther* hearing, counsel explained why he chose not to call Catherine Okla. Counsel's decision not to call Okla was a matter of trial strategy. Defendant has not demonstrated that his decision warrants reversal. Moreover, while defense counsel did not elicit all of the testimony he wanted to elicit from Ross, she provided the jury with data and information about the manner in which children can be manipulated. She also rendered an ultimate conclusion in this case. Defense counsel testified at the *Ginther* hearing that he was able to use Ross' testimony effectively to argue the case to the jury. He believed that this argument, coupled with discrepancies in other testimony and the evidence of the dynamics between the parties, was sufficient to raise an issue of doubt with the jurors. He consciously decided not to call Goldman to fill in any of the gaps with respect to Ross' testimony. We will not second-guess counsel's decision with respect to the evidence.

*Robinson,* 2003 WL 21205841, *3, *4 (internal citations omitted). The Court agrees for three reasons.

First, at the *Ginther* hearing, Karol Ross testified that she met with trial counsel for several hours in person and by telephone in preparation for Petitioner's case. (GH Tr., 7/27/00, at 14). Catherine Okla also testified that she was in contact with trial counsel several times by phone and one in person meeting regarding this case. *Id.* at 67-68. Therefore, the record belies Petitioner's argument that trial counsel did not adequately prepare to present expert testimony in support of his defense. Second, although the trial court sustained several objections to the admission of Karol Ross' testimony on hearsay grounds, he remained able to present testimony to the jury from Ms. Ross about the concept of "magical thinking" and her opinions on why Dallas' testimony was not reliable, thus providing a basis for reasonable doubt. (Trial Tr., 3/23/00, at 119-29).

Third, as trial counsel stated at the *Ginther* hearing, his direct examination of

13

Catherine Okla would have been subjected to the same hearsay objections as that of Ms. Ross' examination because both experts were prepared to offer testimony about Mr. Goldman's reports of his therapy sessions with Dallas. (GH, Tr., 7/27/00, at 103-04).  In addition, Ms. Okla and Ms. Ross' testimony was duplicative in several respects.  *Id.* Therefore, he opted not to call Ms. Okla as an expert witness in this matter.

Undoubtedly, trial counsel could have presented a better defense, in hindsight, to better undermine the veracity of Dallas' account of what transpired between he and Petitioner.  However,  the Court is mindful that the purpose of the Sixth Amendment is not to improve the quality of legal representation, *Strickland,* 466 U.S. at 689, and it requires not a perfect defense, but only reasonably competent representation, which the Court is convinced was rendered in this case by trial counsel.  See *United States v. Natanel,* 939 F.2d 302, 309-10 (1st Cir. 1991).  Therefore, trial counsel's use of Catherine Okla and Karol Ross does not rise to the level of ineffective assistance of counsel.

### c. Failure to use Mark Fecteau as a Fact Witness

Petitioner asserts that his attorney was ineffective due to his failure to interview and use  Mark Fecteau as a fact witness at trial.  Mr. Fecteau "was willing to testify that he had an intimate relationship with Petitioner during relevant time frames and the distinct appearance of her genital area was in stark contrast to the description provided by the complainant."  (Pet. at 36)  Mr. Fecteau described Petitioner's vaginal area as being "shaved" "routinely" and that she "had a pierced labia and a small, gold, hoop earing affixed to th[e] pubic region."  (Pet., App. D). Dallas' description of Petitioner's pubic area made no mention of any piercing or earring; and he stated that the area was "hairy." (Trial Tr., 3/24/00, at 21).   Petitioner describes trial counsel's failure to call Mr. Fecteau as

14

"preparatory failure." (Pet. at 37).

The Michigan Court of Appeals disagreed and addressed the issue as follows:

> Defense counsel testified at the *Ginther* hearing that he determined that the witnesses urged by defendant would not be particularly helpful or persuasive. Defense counsel's decisions with respect to the witnesses who were called and the evidence that was presented were matters of trial strategy, which this Court will not second-guess.
>
> *   *   *
>
> Defendant asserts that Fecteau would have testified that defendant was a former exotic dancer and had gotten into the habit of shaving her pubic area, and also had as pierced labia in which she wore a small hoop earring. Defendant argues that this testimony would have cast serious doubt on whether the victim, in fact, experienced the sexual interactions with defendant, because the victim asserted that defendant's pubic area was hairy, and failed to mention any earring. Counsel decided not to call Fecteau based on the hostility between Fecteau and defendant. We will not second-guess this decision.

*Robinson,* 2003 WL 21205841, *4  (internal citations omitted).

Although Mr. Fecteau signed an affidavit approximately one year *after* the conclusion of Petitioner's trial providing testimony which would have called into question Dallas' description of Petitioner's genitalia, and would have undermined his veracity in this case, the Court finds that trial counsel's decision not to call Mr. Fecteau as a witness did not constitute ineffective representation. The *Ginther* hearing testimony revealed that there were suspicions that Mr. Fecteau sexually abused Dallas, Petitioner was afraid of getting Mr. Fecteau involved in this case, and there was hostility between Petitioner and Mr. Fecteau.   (GH, Tr., 7/27/00, at 129-30). The *Ginther* hearing testimony was as follows:

> Q   Okay.  If it is the case that Mr Fecto was hostile to Heather in Heather's mind, isn't it possible that you could have called him as a hostile witness and examined him solely on the issue of whether he had been involved in, with his mother, a previous allegation by Sandra Peterman.  Is that possible?

15

> A      I'm going to say this and the only time in my testimony as having tried
>        a lot of cases, that would strike me as pretty risky business.

*Id.* at 130.  Therefore, trial counsel was clearly aware of Mr. Fecteau as a potential witness

and determined that it was too risky to call him to the stand because of the negative history

and hostility which surrounded Mr. Fecteau. Accordingly, Petitioner has not shown that trial

counsel was ineffective for not calling Mr. Fecteau as a witness.

### 2.  Failure to Object Prosecutorial Misconduct

Petitioner cites several instances of prosecutorial misconduct: (1) elicited testimony

concerning unrelated charges and associated jail time; (2) elicited testimony about

Petitioner's sexual promiscuity; (3) argued facts not supported by the record regarding time

Petitioner spent in jail; (4) highlighted the circumstances surrounding Petitioner biting Dallas

on the buttocks and his removal from her care; (5) badgered Petitioner about sexually

explicit acts involving she and Dallas, but only attested to by Mr. Peterman; (6) during

rebuttal, the prosecutor stated that the defense was "ridiculous," Karol Ross was "pathetic,"

and that "Macomb County ought to be weary [sic] of what she's doing in these courtrooms;"

(7) also during rebuttal, "[t]he prosecutor urged the jury to convict even if they had a "little

doubt" and told the jury not to worry about the responsibility of sentencing as the judge

would do "whatever the judge wants to do;" and (8) additional rebuttal included the

prosecutor calling Petitioner a "liar" and stating that "[he thought] based on everything [he]

heard in this case, the [Petitioner] did it."  (Pet. at 46-51 (internal references omitted)).

Petitioner claims he received ineffective assistance of trial counsel due to his trial

counsel's failure to object to these repeated instances of prosecutorial misconduct.

For reasons set forth *infra* at B, the Court finds that the prosecutor did not engage

16

in misconduct.  Therefore, trial counsel's failure to request a mistrial following Petitioner's perceived improper actions during trial would not constitute ineffective assistance of counsel.  Habeas relief is denied on this claim.

### 3.  Failure to Object to Improper Bolstering by an Agent of the Prosecution & Procedural Default

Petitioner contends that Mary Kay Neumann, a social worker employed by the Oakland County Prosecutor's Office, was improperly used as an expert witness for the purpose of legitimizing the credibility of Dallas' testimony. Petitioner asserts that Ms. Neumann's expression of her personal beliefs regarding the veracity of Dallas' testimony was extremely and inherently prejudicial to Petitioner's defense.  Since trial counsel did not place an objection on the record to Ms. Neumann's testimony, Petitioner claims that his failure to do so constitutes ineffective assistance of counsel.

The Court first recognizes that this issue is  procedural defaulted, as there were no ineffective assistance of counsel challenges as to this issue before the state appellate court.  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Petitioner's above stated claim, therefore, is procedurally defaulted. The Court, however, need not address the procedural default issue here.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the doctrine is not jurisdictional.  *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v.*

17

*Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable . . . while the procedural bar issues are complicated.*" Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999)(internal citations omitted); see also *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett*, 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). In this case, the Court will excuse the alleged procedural default because it deems it more efficient to proceed directly to the merits of Petitioner's evidentiary claim. *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005).

For reasons set forth *infra* at D, the Court finds that Ms. Neumann's testimony did not bolster Dallas' statements, nor did the prosecutor use Ms. Neumann's testimony in an effort to do so. Therefore, trial counsel's failure to object to the prosecutor's line of questions directed to Ms. Neumann did not constitute ineffective assistance of counsel. Habeas relief is denied on this claim.

### B. Prosecutorial Misconduct & Procedural Default

The Michigan Court of Appeals addressed this issue as follows:

Defendant argues that the prosecutor committed misconduct in eliciting lurid testimony and in making lurid remarks. This issue was not preserved with an appropriate objection at trial and, therefore, we review the issue for plain error. We find no plain error requiring reversal. The challenged testimony was relevant. It served to establish the elements of the crime and to rebut that the victim fabricated the sexual contact with defendant. The terminology employed was not prejudicial. It is not misconduct to elicit admissible testimony.

Defendant also argues that the prosecutor engaged in misconduct when he misspoke and referred to defendant's "little penis" on three occasions. A prosecutor may not argue facts that are not in evidence. The prosecutor in this case argued, or referred to a fact that was not evidence. Obviously the

18

> female defendant did not have a penis or a little penis. The misstatements,
> however, were not intentional. A timely objection could have resulted in a
> curative instruction which would have cured any prejudice. Moreover, the
> jury was instructed that the lawyers' statements, arguments and questions
> were not evidence. Therefore, there is no error requiring reversal.

*Robinson,* 2003 WL 21205841, *5  (internal citations omitted).

The Court first notes that Petitioner is in procedural default relative to the prosecutorial misconduct issue on two fronts. First, as stated by the last state appellate court, the issue was not preserved with an appropriate objection at trial and was, therefore, reviewed for plain error. Michigan's contemporaneous objection rule is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir. 2003).

Second, Petitioner asserted additional facts in support of her prosecutorial misconduct claim which were raised for the first time in her motion for relief from judgment. The last state court to issue a reasoned opinion addressing the prosecutorial misconduct claim relative to these new facts, held that "the defendant failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Robinson,* 474 Mich. 985; 707 N.W.2d 204 (2005).  The Sixth Circuit held that denial of leave to appeal based on petitioner's failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a sufficient determination that the court's conclusion was based on procedural default.  See *Burroughs v. Makowski,* 282 F.3d 410, 413-14 (6th Cir. 2002). Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues as to which it is applied.  *Simpson v. Jones,* 238 F.399, 407 (6th Cir. 2000).  Where "a state prisoner defaulted his federal claims in state court pursuant to an independent and

19

adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Petitioner's prosecutorial misconduct claims, are therefore, procedurally defaulted. However, also for the reasons stated, the Court will address the merits of Petitioner's claim.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Anger v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997), quoting *Serra v. Michigan Department of Corrections* 4 F.3d 1348, 1355 (6th Cir. 1993).

When assessing the prosecutor's conduct, the court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16

(6th Cir. 2006).  If they were, the court must decide whether the improper acts were so flagrant as to warrant relief.  *Id.* at 516.  The Sixth Circuit identified four factors to consider when analyzing conduct for flagranc*y*: "(1) whether the statements [or conduct] tended to mislead the jury or prejudice the defendant; (2) whether the statements [or conduct] were isolated or among a series of improper statements [or conduct]; (3) whether the statements [or conduct] were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused."  *Millender,* 376 F.3d at 528, quoting *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir. 2000).

Petitioner's myriad of prosecutorial misconduct claims is essentially three-fold: (1) presentation of prejudicial and inflammatory evidence which served to "assassinate" Petitioner's  character in the eyes of the jury; (2) references to facts not in evidence; and (3) improper rebuttal closing argument.  First, upon review of the record and the evidence that was elicited regarding Petitioner's promiscuity, her negative relationship with her family, and circumstances surrounding the alleged sexual assault,  although the testimony was not favorable, the prosecutor did not engage in misconduct.  Not only was this same testimony revealed on direct examination from the Petitioner, but any additional inquiry by the prosecutor did not amount to flagrant behavior. See *Id.*

Second, Petitioner asserts that the prosecutor suggested to the jury that Petitioner's father did not visit her in jail in an effort to demonstrate to the jury that Petitioner's own family has abandoned her.  It is Petitioner's position that no jail visitation records were admitted into evidence to support the prosecution's allegations of abandonment; and therefore the prosecutor improperly referred to facts not in evidence.  The Court does not find this argument persuasive .  Although it is improper to argue facts to the  jury that were

21

never admitted into evidence, as it may mislead the jury in a prejudicial manner, *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000), that is not what was done in this case.  The prosecutor questioned Petitioner about whether her father visited her while she has been in custody relative to this case.  Petitioner told the prosecutor that he had visited her and the prosecutor said" "[i]f we were to pull the records from the detention facility across the street, you're telling us that those are not true?" (Trial Tr., 3/24/00, at 113).  However, the prosecutor appeared to be confusing jail records he was attempting to impeach Petitioner on with another incarceration a year previously.  The exchange was as follows:

Q      And you went into the jail in November of '99?

A      September.

*   *   *

Q      I'm sorry. November of '98 you went into jail?

A      You're confusing me.  You were talking about this incarceration or - -

Q      You're right, you're right.  I apologize.  You went into jail on this charge when?

A      September

Q      of '99.

A      Yes.

Q      And he's been to see you, you say three times?

A      Yes.

Q      Okay . . .

*Id.* at 114-15.  Accordingly, it appears that the prosecution dropped the issue and moved on to another line of questioning.

22

Finally, Petitioner points to the prosecutor's rebuttal closing argument as a basis for her prosecutorial misconduct claim. The Court also does not find this argument persuasive for three reasons.  First, the Sixth Circuit "has been reluctant to grant habeas petitions on improper prosecutorial statements at closing argument," *Wilson v. Mitchell,* 250 F.3d 388, 399 (6th Cir. 2001), for "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004).  Second, prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overberg,* 682 F2d 605, 607-08 (6th Cir. 1982) (*en banc).* Finally, upon reviewing the disputed text, the Court does not find that the prosecutor was imposing his own personal beliefs and opinions upon the jury.  Nor does the Court find the prosecutor's reference to the Petitioner as a "liar[1]" to be improper.  The disputed text in its entirety is as follows:

> You have to think about the truth in this case.  And I'll tell you right now, nobody in that jury box where you're sitting at right now is going to ever be a hundred percent sure.  Because, if you think about it to be a hundred percent sure, you would have had to have been there yourself.  And you're never going to be one hundred percent sure.
>
> What Mr. Weitzman doesn't tell you is that's the burden in every Court in this building, every Court in this state, every Court in this country.  And every single day defendant's like Sandra or defendant's like Heather come into Courtrooms and they're convicted by guilt beyond a reasonable doubt.

---

[1]It is not improper for a prosecutor to refer to witness testimony as a "lie" if there is evidence that supports the contention. *United States v. Nernandez-Muiz,* 170 F.3d 1007, 1012 (10th Cir. 1999).  Also, the prosecutor may imply or state that a defendant or defense witnesses are lying during closing argument as long as the prosecutor emphasizes discrepancies between the defendant's' testimony and the record. *United States v. Owens,* 426 F.3d 800, 806 (6th Cir. 2005).  Moreover, a prosecutor can make statements to the jury during closing argument in an effort to appeal to the juror's common sense. *Puertas v. Overton,* 342 F.Supp.2d 649, 666 (E.D. Mich. 2004).

So, don't think it has to be one hundred percent in your mind.  You're always going to have a little doubt.

One way to think of it is when you go back in that jury room and you say to yourself I think she did it.  You're going to ask yourself why do I think that.  You're going to say to yourself, I'm a reasonable person.  I have common sense.

*I listened to what Dallas said.  I listened to what the Petermans said.  And I listened to what the liar on the stand said too.  And you know what, I think based on everything I heard in this case, the defendant did it.  That's my burden.  Nothing more.*

When you go back there and you talk about this case, you remember you have to hold her accountable for what she did to that little boy.

This all started with a dream.  But, ladies and gentleman, I guarantee that Dallas will have nightmares for the rest of his life of what that woman did to him.  Don't let her forget that.

(Trial Tr., 3/24/00, at 161-62) (emphasis added).

Reading the emphasized portion of the excerpt Petitioner disputes, the Court does not find that those thoughts are the prosecutor's beliefs and opinions, but rather a situation where he is asking the jurors to think about why *they* would find Petitioner guilty and then proceeded to run through a series of reasons why the *juror* would believe Petitioner was guilty . . . not why the *prosecutor* believes in Petitioner's guilt. The prosecutor was appealing to the juror's common sense.  He was not imposing his personal beliefs and opinions upon them. Also, for reasons cited in fn.1, the Court does not find that the prosecutor's use of the term "liar" to describe Petitioner rose to the level of prosecutorial misconduct.

Petitioner has failed to demonstrate that the prosecutor's conduct was intentional, flagrant and resulted in a fundamentally unfair trial, the Court finds that the appellate court was not unreasonable in its application of clearly established federal law as determined by

24

the Supreme Court.  Accordingly, habeas relief is denied relative to this claim.

### C. Present a Defense

Petitioner argues that she was denied the opportunity to present evidence concerning "magical thinking," i.e., Dallas' account of what transpired between he and Petitioner did not really occur.  Petitioner also asserts that she was deprived of showing that "Lou Goldman, a non Ph.D therapist, was hired by Petitioner's mother, who was in the process of gaining custody of Dallas Robinson."  (Pet. at 56-57).  Specifically, she was precluded from eliciting expert witness testimony from Karol Ross concerning her findings or conclusions, or treatment methods of social worker Lou Goldman, a clearly interested "coach" for the prosecution, at that time this case went to trial."  *Id.* at 57-58.

The Michigan Court of Appeals disagreed and concluded as follows:

> At trial, defendant's counsel asked Ross to "comment" on or testify about Goldman's notes and conclusions.  The prosecutor objected on hearsay grounds.  The trial court sustained the objections . . .
>
> .  .  .  It simply sustained objections to certain questions that were directed at the substance of Goldman's and the Care House interviewer's findings. The questions regarding Goldman focused on eliciting testimony regarding "magical thinking," apparently in an effort to undermine the victim's credibility. The Care House questions focused on the conclusion that the victim was incompetent to testify.  While MRE 703 permits an expert to rely on hearsay, it also permits the court to require that the underlying facts or data essential to an opinion or inference be in evidence.   Here, where defendant intended to provide the jury with the information that Goldman found magical thinking and Care House concluded the victim was not competent, and then use that information as the basis for a conclusion that the victim was not reliable, the trial court did not abuse its discretion in sustaining the hearsay objection, in effect ruling that Goldman and the Care House examiner would have to explain their conclusions before Ross could comment on them.  In contrast, Ross was not prohibited from commenting on other aspects of Goldman's notes, and on proper interviewing techniques for children and how children can be influenced by the interviewer.  Because Ross was not prohibited from relying on or utilizing Goldman's notes in formulating her expert opinion and because she was not prohibited from rendering conclusions with respect to

25

the case, we are not persuaded that defendant was prevented from presenting her defense because of the rulings at issue.

*Robinson,* 2003 WL 21205841, *2  (internal citations omitted).

The right of an accused to present a defense has long been recognized as "a fundamental element of due process."  *Washington v. State,* 388 U.S. 14, 19 (1967). The Court does not find that Petitioner's due process rights have been violated relative to this issue.  As stated *supra* under argument A(1)(b),  although the trial court sustained several objections to the admission of Karol Ross' testimony on hearsay grounds, he remained able to present testimony to the jury from Ms. Ross about the concept of "magical thinking" and her opinions on why Dallas' testimony was not reliable, thus providing a basis for reasonable doubt.  (Trial Tr., 3/23/00, at 119-29).  Therefore, Petitioner was provided the opportunity to present the defense and did so.

### D.  Bolstering of Testimony

Petitioner contends that Mary Kay Neumann, a social worker employed by the Oakland County Prosecutor's Office, was improperly used as an expert witness for the purpose of legitimizing the credibility of Dallas' testimony. Petitioner asserts that Ms. Neumann's expression of her personal beliefs regarding the veracity of Dallas' testimony was extremely and inherently prejudicial to Petitioner's defense.

The totality of Petitioner's claim is based upon the following two responses from Ms. Neumann: (1) " . . .  so there's no other reason for this child saying this except for that it happened;" and (2) " . . . I believe that, that more happened to this child than what he was saying.  And that was my professional opinion."  (Trial Tr., 3/24/00 at 29, 31).  However, what is omitted from Petitioner's argument is what Ms. Neumann stated just prior to making

those statements.  Just before making the first statement, Ms. Neumann was not referring to Dallas and this particular case, but rather was explaining through her testimony the interview process involving child victims in general, the investigation relative to the child's care givers and the accused, and the "team" dynamic relative to an investigation.  *Id.* at 27-29.  The exchange was as follows:

> Q    And the goal is so that no stone is left unturned?
>
> A    Correct.  That we checked every avenue so that we can make sure that we rule different avenues out.  So that we, we boil it all down to what the child's saying,  *so there's no other reason for this child saying this except for that it happened.*

*Id.* at 27-29 (emphasis added). Therefore, Ms. Neumann is not expressing an opinion on the credibility of Dallas, but rather stating that because of its extensive investigations in cases like the one at bar, the "team" is to make sure that there is no other explanation for why the child is making the allegations at issue.  Accordingly, the Court finds no bolstering as to Ms. Neumann's comment.

As to Ms. Neumann's second statement, the Court does not find that she gave an opinion about Dallas' testimony in an effort to undermine his credibility and "bolster" the prosecution's case.  Rather, Ms. Neumann stated that *based upon her interview* with Dallas, she believed "*that more happened to this child than what he was saying.*"  *Id.* at 31. Therefore, since the record does not indicate that the prosecutor used Ms. Neumann to bolster his case, habeas relief is not warranted.

### E.  Ineffective Appellate Counsel

Petitioner maintains that he received ineffective assistance of appellate counsel when he failed to raise the  "dead bang winner" issues on appeal of whether the prosecutor

27

engaged in misconduct and whether trial counsel's failure to object to the prosecutorial

misconduct constituted ineffective assistance of counsel.  In order for Petitioner to prevail

on his ineffective assistance of appellate counsel claim, he must show that the prosecutor's

alleged misconduct and trial counsel's failure to object to said conduct are meritorious

issues.  Appellate counsel may deliver a deficient performance and prejudice a defendant

by omitting a "dead bang winner," which is defined as "an issue which was obvious from

the trial record and would have resulted in a reversal on appeal." See *Meade v. Lavigne,*

265 F.Supp.2d 849, 870 (E.D. Mich. 2003). (internal quotations omitted).  To show

prejudice in the context of an appellate counsel claim, Petitioner must show that his claim

would have succeeded on appeal.  See *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000).

It is well-established that a criminal defendant does not have a constitutional  right

to have appellate counsel raise  every nonfrivolous claim, but rather may select from

among them in order to maximize the likelihood of success on appeal.  See *Jones v.*

*Barnes,* 463 U.S. 745, 754 (1983).  The *Jones* Court explained:

> For judges to second-guess reasonable professional judgments and impose
> an appointed counsel a duty to raise every "colorable" claim suggested by a
> client would disserve the   . . .  goal of vigorous and effective advocacy . . .
> Nothing in the Constitution or our interpretation of that document requires
> such a standard.

*Id.* at 754.

Based upon the analysis set forth above, Petitioner's prosecutorial misconduct and

ineffective assistance of counsel claims are not meritorious.   Accordingly, the Court

concludes that Petitioner is not entitled to habeas relief on this claim.

### F.  Unconstitutional Standard of Proof (28 U.S.C. §2254(d)(1))

Petitioner contends that despite the Court's findings relative to the above stated

issues, she remains entitled to relief because the standard of review set forth under 28 U.S.C. §2254(d)(1) is unconstitutional for three reasons: (1) the limitations under 28 U.S.C. §2254(d)(1) violate the doctrine of separation of powers; (2) the limitations under 28 U.S.C. §2254(d)(1) violate the Supremacy Clause of the United States Constitution; (3) the unconstitutionality of 28 U.S.C. §2254(d)(1) requires the federal court to issue advisory opinions that may not be enforced; (4) the standard of review under 28 U.S.C. §2254(d)(1) violates the Due Process Clause of the Fourteenth Amendment; and (5) The strictures of the AEDPA violate Article I, Section 9 of the federal constitution because they effectively suspend the writ of habeas corpus. The Court does not find these arguments persuasive, and further finds that the AEDPA standard of review governs Petitioner's claims. Accordingly, habeas relief is not warranted on this issue.

First, Petitioner asserts that 28 U.S.C. §2254(d)(1) violates the separation of powers by mandating the law to be applied by federal courts and removing their power to adjudicate constitutional issues. The Fourth and Ninth Circuits both have rejected Petitioner's argument.

> In amending section 2254(d)(1), Congress has simply adopted a choice of law rule that prospectively governs classes of habeas cases; it has not subjected final judgments to revision, nor has it dictated the judiciary's interpretation of governing law and mandated a particular result in any pending case. And amended section 2254(d) does not limit any inferior federal court's independent interpretive authority to determine the meaning of federal law in any Article III case or controversy. Under the AEDPA, we are free, if we choose, to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the habeas remedy in certain circumstances.

*Green v. French,* 143 F.3d 865, 874-75 (4th Cir. 1998) (internal citations), abrogated on other grounds by *Williams v. Taylor,* 529 U.S. 362 (2000).

> Section 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation served to govern prospectively class of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending case.

*Duhaime v. Ducharme,* 200 F.3d 597, 601 (9th Cir. 2000); see also, *Evans v. Thompson,* 518 F.3d 1, 4-10 (1st Cir. 2008).   For these reasons, the Court likewise rejects Petitioner's claim that the AEDPA standard of review violates the separation of powers by encroaching on the Court's exercise of the judicial power.

Second, Petitioner maintains that the AEDPA standard violates the Supremacy Clause of the United States Constitution. The Court finds that this claim has no merit.

> Nothing in the AEDPA subjugates the Constitution to state law.  As the Supreme Court has often noted, the state courts, as co-equal guardians of federal constitutional rights, are perfectly capable of passing on federal constitutional questions.  And under the Supremacy Clause, state courts are obligated to enforce the Constitution above state law to the contrary.  Nothing in the AEDPA changes this rule of law.  The AEDPA does, to be sure, require that federal courts give deference to the federal constitutional decisions of the state courts.  This, however, does not offend the Supremacy Clause, which "is concerned with promoting the supremacy of federal law, not federal courts."   In short, the AEDPA standard of review does not violate the Supremacy Clause because that Clause "is concerned about a conflict between state and federal law, not between state and federal judges.  Indeed, to say, as the Clause does, that federal law shall be 'Supreme . . . any thing in the Constitution or laws of any State to the Contrary notwithstanding' is to say nothing at all about the respective roles of the state and federal courts."

*Byrd v. Trombley,* __ F.Supp.2d __ 2008 WL 4298451, *3-5 (E.D. Mich. Sept. 18, 2008) (internal citations omitted)**.**  Therefore, the Court does not find 28 U.S.C. §2254(d)(1) to be violative of the Supremacy Clause.

Third, Petitioner claims that 28 U.S.C. §2254(d)(1) violates Article III of the Constitution by requiring federal courts to issue advisory opinions.

[N]othing in the AEDPA requires a federal court to determine whether a state court wrongly, as opposed to unreasonably, applied the Constitution. A federal court may, and the courts often do, dispose of a habeas case merely by assessing the reasonableness of the state determination, without ever rendering an opinion on the ultimate correctness of the state court decision.

In any event, any determination on the merits of the underlying constitutional claim as part of the reasonableness inquiry under §2254(d)(1) does not amount to an advisory opinion. The underlying constitutionality may decide the case, for if the particular claim is without merit as a matter of federal constitutional law, it necessarily follows that the state court's rejection of the claim was reasonable. At worst, a court's determination on the underlying constitutional question would be dictum, but dictum is not itself an unconstitutional advisory opinion.

*Id.* at *8, *9 (internal citations omitted). Therefore, 28 U.S.C. §2254(d)(1) is not violative of Article III as it relates to the issuance of advisory opinions.

Fourth, Petitioner contends that 28 U.S.C. §2254(d)(1) violates the Due Process Clause of the Fourteenth Amendment. She argues that the "standard of review in 28 U.S.C. §2254(d)(1) expressly prevents federal courts from remedying a whole class of due process violations (i.e., those in which a state court has wrongly, but unreasonably, applied constitutional guarantees to the state defendants), and in so doing it runs afoul of the Due Process Clause." (Pet. at 70).

Contrary to petitioner's argument, under the AEDPA standard of review he "is not denied a forum for the vindication of his constitutional rights. The Court still has the power to issue the writ, albeit under more tightly circumscribed conditions." In particular, no due process violation can be shown in light of the historical power of Congress and the courts to impose limitations on the scope of habeas relief.

*Byrd,* __ F.Supp.2d at *9, 2008 WL 4298451 (internal citations omitted). Consequently, Petitioner's due process rights have not been violated.

Finally, Petitioner asserts that "the strictures set out in . . . AEDPA . . . violate Article I, Section 9 of the federal constitution because they effectively suspend the writ of habeas

corpus." (Pet. at 70).

> The Supreme Court has "long recognized that 'the power to award the writ by any of the courts of the United States, must be given a written law,' and . . . that judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).
>
> *   *   *
>
> The AEDPA does not suspend the writ as it was known at the time of the Founding, and "[a]ny suggestion that the Suspension Clause forbids every contraction of the powers bestowed by Congress in 1885, and expanded by the 1948 and 1966 amendments to §2254, is untenable . . . " [*Felker,* 518 U.S. at 664] . . . " . . .  Because federal courts are bound by the terms on which Congress sees fit to permit relief, we have no constitutional or other jurisprudential basis to be reluctant to accord state court decisions the full degree of deference that Congress intended and that the plain language of the statute requires."    *Neal v. Puckett,* 286 F.3d 230, 248 (5th Cir. 2002) . . .  In light of the nature of the writ at common law, the historical power of Congress and the courts to alter the nature and scope of the writ, and the fact that §2254(d)(1) merely alters the standards on which the writ will issue, every court that has considered the issue has rejected a Suspension Clause challenge to the AEDPA standard of review.  *See Evans,* 518 F.3d at 12; *Olona v. Williams,* 13 Fed. Appx. 745, 747 (10th Cir. 2001); *Houston v. Roe,* 177 F.3d 901, 906 (9th Cir. 1999); *Green,* 143 F.3d at 875-76; . . .

*Byrd,* __ F.Supp.2d at *10, 2008 WL 4298451.  Therefore, there has been no Suspension

Clause violation.

**IV.  CONCLUSION**

Petitioner has not established that she is in custody in violation of the Constitution or laws of the United States.

Accordingly,

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. #1] is DENIED.

s/Marianne O. Battani
HONORABLE MARIANNE O. BATTANI
UNITED STATES DISTRICT COURT

Dated: <u>February 6, 2009</u>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this amended opinion and order was served upon Petitioner, F. Martin Tieber, and John Pallus via ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt

Deputy Clerk

33